Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. Plaintiff is an employee of U.S. Airways, Inc.
3. The insurance carrier for the employer is Reliance National, with its claims administered by Alexsis.
4. The plaintiff's average weekly wage is $801.97.
***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a 35-year-old, married female who is the mother of two young children, and who has been employed as a flight attendant for the defendant-employer since July of 1987. Her medical history is significant for undergoing right knee surgery as a child to realign the patella.
2. On January 7, 1997, the plaintiff sustained an admittedly compensable right knee injury when she fell on a wet floor in the Charlotte Douglas International Airport.
3. The defendants admitted liability for the plaintiff's right knee injury via Form 60, pursuant to which it has paid her temporary total disability compensation at the weekly rate of $512.00 from January 8, 1997 until May 24, 1997, from June 15, 1997 until June 24, 1997, and from July 3, 1997 through the date of the Opinion and Award of the Deputy Commissioner.
4. The plaintiff was first treated for her injury, by Dr. Daniel Bernstein of WorkWell on January 8, 1997. Dr. Bernstein diagnosed her with a right knee contusion, advised her to participate in physical therapy, and restricted her from working. He subsequently referred her to Dr. DuPuy.
5. On January 16, 1997, the plaintiff sought treatment from Dr. David DuPuy of Charlotte Orthopedic Specialists. Dr. DuPuy diagnosed her with a contusion of the right knee, and probably degenerative cleavage tear of the medical meniscus. On February 22, 1997, Dr. DuPuy performed arthroscopic surgery of the plaintiff's right knee, at which time he was able to rule out the diagnosis of a torn medial meniscus. He did, however, perform an abrasion chondroplasty, removal of the popliteal cyst, and trimming of irregular cartilage within the knee. Thereafter, Dr. Dupuy continued to treat the plaintiff, and on April 8, 1997, he determined she had reached maximum medical improvement, that she retained 15 percent permanent partial impairment to the right leg as a result of her compensable knee injury and 15 percent permanent partial impairment to the right leg due to her pre-existing knee condition, and that she was capable of returning to work as a flight attendant.
6. On April 7, 1997, the plaintiff underwent an evaluation by Dr. David Kingery of the Miller Orthopaedic Clinic, which evaluation was arranged by the rehabilitation nurse at the plaintiff's request for an additional medical opinion. Dr. Kingery initially diagnosed the plaintiff with anterior knee neuritis due to a contusion. On May 6, 1997, he released the plaintiff to return to work without restrictions the following day.
7. On May 20, 1997, the plaintiff underwent a neurological evaluation by Dr. Frederick Pfeiffer of Mecklenburg Neurological Associates, to whom she was referred by Dr. Kingery after requesting a neurological referral. Dr. Pfeiffer diagnosed the plaintiff with an injury to a cutaneous nerve, but stated that such an injury would not produce weakness or disability. He released the plaintiff to return to work without restrictions on June 1, 1997.
8. On May 23, 1997, the plaintiff was re-evaluated by Dr. Bernstein. He released her to resume her regular job duties.
9. From April 2, 1997 through May 29, 1997, the plaintiff participated in a program of physical therapy at Pineville Physical Therapy. At the time of the plaintiff's discharge from the program, her right knee range of motion was normal, her muscle strength was good, and she was released to work full time.
10. On June 6, 1997, the plaintiff sought an additional medical opinion from Dr. Joseph Estwanik of Metrolina Orthopaedic Sports Center. Dr. Estwanik concluded that the plaintiff's subjective complaints were due to long-term arthritic problems within the patella, and released her to resume her regular job duties.
11. On June 26, 1997, the plaintiff was evaluated by Dr. David Mauerhan of the Miller Orthopaedic Clinic. Dr. Mauerhan also released her to return to work as a flight attendant.
12. The plaintiff was re-evaluated by Dr. DuPuy on September 2, 1997 at which time he released her to return to work as a flight attendant without restrictions.
13. The plaintiff also sought treatment from Dr. Jerome Jennings, an orthopedic surgeon from July through October of 1997. Plaintiff underwent an evaluation of permanent impairment by Dr. Daniel Hamaty on August 12, 1997. She sought treatment from Dr. Neal Taub of the Mercy Center for Outpatient Rehabilitation from February through April of 1998. Plaintiff sought emergency medical treatment on several occasions when she attempted to return to work, but claimed she was unable to because of continued pain and swelling.
14. During the course of his treatment of plaintiff, Dr. Jennings restricted her from working, but was unable to offer her additional medical treatment or to make any objective findings in support of her continued knee complaints. On September 24, 1997 Dr. Jennings determined she had reached the end of the healing period related to her right knee injury, and he subsequently released her from his care.
15. Based upon his single evaluation of plaintiff, Dr. Hamaty diagnosed her with hyperalgesic state of lower extremities, right patellofemoral chondrodysplasia, post arthroscopic Baker's cystectomy and patellar chondroplasty, saphenous nerve traumatic neuropathy, recurrent herpes zoster, and affective disorder. He determined she had reached the end of the healing period related to her right knee injury, and rated her as retaining 30 percent permanent partial impairment to the leg based on a neurological impairment.
16. Dr. Taub diagnosed the plaintiff with chronic knee pain and restricted her from working. On April 30, 1998, the date of his final evaluation of the plaintiff, he determined her to be at maximum medical improvement, and recommended that she undergo a functional capacity evaluation.
17. The Commission gives greater weight to the opinions of Dr. Bernstein, Dr. DuPuy, Dr. Kingery, Dr. Pfeiffer, Dr. Estwanik, Dr. Mauerhan, and the Pineville Physical Therapy therapist regarding the extent of the plaintiff's physical capabilities, than to the opinions of Dr. Jennings, Dr. Hamaty, and Dr. Taub.
18. The credible evidence of record establishes that the treatment and evaluation of the plaintiff by all of the above described doctors was reasonably required to effect a cure of, give relief, or lessen the period of the plaintiff's disability related to the incident of January 7, 1997.
19. The plaintiff's position as a flight attendant with the defendants has been available to her continuously throughout the pendency of this claim.
20. The plaintiff has not attempted to return to work as a flight attendant for the defendants since July 9, 1997.
21. The plaintiff has remained physically active throughout the pendency of this claim, and regularly swims and uses a treadmill.
22. The plaintiff's testimony that she remains unable to perform the physical requirements of the flight attendant job, was not accepted as credible by the Deputy Commissioner and the Full Commission declines to reverse the credibility determination.
23. The plaintiff reached the end of the healing period related to her January 7, 1997 injury by accident on April 8, 1997, and as a result thereof retains a 22.5% permanent partial impairment to the right leg.
24. On January 7, 1997, the plaintiff's average weekly wage was $801.97, yielding the maximum compensation rate of $512.00.
25. The defendants overpaid temporary total disability compensation to the plaintiff from August 12, 1997 through the date of the Opinion and Award of the Deputy Commissioner.
***********
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On January 7, 1997, the plaintiff's average weekly wage was $801.97, yielding a compensation rate of $512.00. N.C.G.S. §97-2(5).
2. On January 7, 1997, the plaintiff sustained a right knee injury by accident arising out of and in the course of her employment with the defendants, and as a result thereof was temporarily totally disabled from January 8, 1997 until August 12, 1997, entitling her to compensation at the weekly rate of $512.00. Inasmuch as the parties stipulated that plaintiff received temporary total disability compensation from January 8, 1997 and continuing at least through the date of the hearing before the Deputy Commissioner, the plaintiff is entitled to no further compensation for temporary total disability, and the defendants are entitled to a credit for overpayment of temporary total disability compensation since August 12, 1997. N.C.G.S. §97-2(6); and § 97-29.
3. The plaintiff retains 22.5 percent permanent partial impairment to the right leg as a result of her January 7, 1997 injury by accident, for which she is entitled to compensation at the weekly rate of $512.00 for a period of 45 weeks commencing on April 7, 1998, subject to a credit to the defendants for any overpayment of temporary total disability compensation. N.C.G.S. § 97-31(15).
4. The plaintiff is entitled to have paid by the defendants all medical compensation incurred as a result of the injury by accident sustained on January 7, 1997, including the medical treatment rendered by Dr. Jennings, Dr. Hamaty, Dr. Taub, and Dr. Estwanik.
5. There is credible evidence that six physicians and one physical therapist released plaintiff to return to her regular job and therefore, beginning August 12, 1997, the plaintiff refused work offered by the defendants which was suitable to her capacity; consequently, the plaintiff is not entitled to receive compensation after that date. N.C.G.S. § 97-32.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. The plaintiff is entitled to have paid by the defendants temporary total disability compensation at the weekly rate of $512.00 from January 8, 1997 until August 12, 1997. Inasmuch as the defendants previously paid the plaintiff all compensation to which she is entitled for of her temporary total disability, plaintiff's claim for further compensation is DENIED.
2. Subject to a counsel fee hereinafter approved, the defendants shall pay to plaintiff compensation for her 22.5% permanent partial disability impairment of her leg at the rate of $512.00 per week for a period of 45 weeks. This amount shall be paid to plaintiff in a lump sum, subject to a credit for the overpayment of temporary total disability compensation already paid.
3. The defendants shall pay all medical expenses incurred by plaintiff as a result of her injury by accident of January 7, 1997, including but not limited to treatment by Dr. Jennings, Dr. Hamaty, Dr. Taub and Dr. Estwanik.
4. If the plaintiff is entitled to any payment of benefits pursuant to paragraph 2 of this Award after deducting defendants' overpayment of compensation, a reasonable attorney fee in the amount of 25% of the remaining amount of compensation awarded to plaintiff is approved for plaintiff's attorney.
5. The defendants shall pay the costs, including expert witness fees in the amount of $625.00 to Dr. DuPuy, $400.00 to Dr. Hamaty, and $200.00 to Dr. Taub.
This the ___ day of October 1999.
S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
S/_____________ DIANNE C. SELLERS COMMISSIONER
LKM/bjp